IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


FILED
MAR 1 2 2010
Clerk, U.S. District and
Bankruptcy Courts

IN THE MATTER OF THE APPLICATION OF )
THE UNITED STATES OF AMERICA FOR AN )
ORDER AUTHORIZING THE INSTALLATION )   MISC. NO. _____
AND USE OF A PEN REGISTER, TRAP AND )
TRACE, AND CALLER IDENTIFICATION DEVICE )   UNDER SEAL
ON ELECTRONIC MAIL ACCOUNT ▓▓▓▓▓▓▓ )
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ )

## APPLICATION FOR PEN REGISTER, TRAP AND TRACE, AND CALLER IDENTIFICATION DEVICE

The United States of America, by and through its counsel, Ronald C. Machen, Jr., United States Attorney for the District of Columbia, and G. Michael Harvey, Assistant United States Attorney, hereby applies to the Court pursuant to 18 U.S.C. § 3122 for an Order authorizing the installation and use of a pen register, trap and trace and caller identification device on an electronic mail account operated by Yahoo, Inc. The account is identified as ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ which is an email account that the government has reason to believe is being used by Stephen Jin-Woo Kim who is the subject of a Federal Bureau of Investigation (FBI). In support of this application, the United States certifies the following:

1. The Applicant is an "attorney for the government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure, and therefore, pursuant to Title 18, United States Code, Section 3122, may apply for an Order authorizing the installation and use of a pen register, trap and trace, and/or a caller identification device. Such orders may be issued by "any district court of the United States (including a magistrate judge of such a court) . . . having jurisdiction over the offense being investigated," pursuant to a recent amendment to Section 3127(2)(A) of the

federal Pen Register statute. See Section 216 of the USA Patriot Act of 2001, enacted on October 25, 2001, and codified as 18 U.S.C. § 3127(2)(A).

2.  The Applicant certifies that the FBI is conducting a criminal investigation of possible violations of federal laws, including 18 U.S.C. § 793 (unauthorized disclosure of national defense information). The applicant further certifies that, as set forth below, the information likely to be obtained is relevant to the ongoing criminal investigation.

3.  More specifically, there is reasonable cause to believe, based on the FBI's investigation to date, that in June 2009 classified United States national defense information was published in an article on a national news organization's website (hereinafter the "June 2009 article"). The disclosed national defense information was (and still is) classified at the TOP SECRET level. "Classified" information is defined by Executive Order 12958, as amended by Executive Order 13292, and their predecessor orders, Executive Orders 12356 and 12065, as information in any form that: (1) is owned by, produced by or for, or under control of the United States government; (2) falls within one or more of the categories set forth in the Order; and (3) is classified by an original classification authority who determines that its unauthorized disclosure reasonably could be expected to result in damage to the national security. Where such damage could reasonably result in "exceptionally grave" damage to the national security, the information may be classified as "TOP SECRET."

4.  Classified information, of any designation, may be shared only with persons determined by an appropriate United States government official to be eligible for access to classified information, who have signed an approved non-disclosure agreement and who possess

2

a "need to know." If a person is not eligible to receive classified information, classified information may not be disclosed to that person. The unauthorized disclosure of such information is prohibited by 18 U.S.C. § 793, among other statutes and regulations.

5. Following the disclosure of the national defense information in the June 2009 article, an FBI investigation was initiated to determine the source(s) of the unauthorized disclosure. The investigation has revealed that one individual who had access to the TOP SECRET national defense information was Stephen Jin-Woo Kim, a Lawrence Livermore National Laboratory employee who was on detail to the Department of State at the time of the publication of the June 2009 article. Mr. Kim possesses a TOP SECRET security clearance. As an government employee with a security clearance, Mr. Kim has executed multiple SF 312 Classified Information Non-Disclosure Agreements. SF 312 Agreements are legally binding agreements between an individual being granted, or already in possession of, a security clearance, and the United States Government which states that the individual never disclose classified information without authorization. As used in the SF 312 Agreement, classified information is marked or unmarked classified information, including oral communications, that is classified under the standards of Executive Order 12356, as well any other Executive Order or statute that prohibits the unauthorized disclosure of information in the interest of national security.

6. The investigation has further revealed that approximately four hours before the June 2009 article was published, Mr. Kim accessed electronically on his classified work computer the intelligence report that contained the TOP SECRET classified information which later that day was disclosed in the June 2009 article. The intelligence report was clearly marked

TOP SECRET and plainly instructed the reader that all of the information contained in the report was classified TOP SECRET and was not authorized for disclosure. Nevertheless, the FBI's investigation has further revealed evidence that *at the same time that Mr. Kim was viewing this TOP SECRET report he placed two telephone calls to the reporter who later that afternoon would authored the June 2009 article* (hereinafter "Reporter A"). In the hour following those calls to Reporter A, the FBI's investigation has further revealed evidence suggesting that the Mr. Kim met face-to-face with Reporter A outside of the Department of State. Specifically, the FBI has obtained electronic entry and exit records from the Department of State that demonstrate that Mr. Kim and Reporter A, who also worked at the Department of State at the time, departed and then later returned to the building at nearly the same time and location. They were both absent from the building for approximately 40 minutes. Approximately three hours after that probable face-to-face meeting between Mr. Kim and Reporter A, the June 2009 article was published on the Internet. Immediately following the publishing of the article, yet another call was placed from Mr. Kim's work telephone to Reporter A's telephone number.

7. Mr. Kim was not authorized, directly or indirectly, by the U.S. government to deliver, communicate, or transmit the TOP SECRET information contained in the June 2009 article to Reporter A or any other member of the press, and Reporter A was not authorized to receive it.

8. On September 24, 2009, the FBI conducted a non-custodial interview of Mr. Kim concerning the leak of classified information in the June 2009 article, among others. During that interview, Mr. Kim denied being a source of the classified information in the June 2009 article.

4

He admitted to meeting Reporter A in approximately March 2009 but denied having any contact with Reporter A since that time. Mr. Kim stated that Department of State protocol required that he would have to go through the Department of State press office before he could speak with the press. Mr. Kim added, "I wouldn't pick-up a phone and call [Reportor A] or [the news organization that Reporter A works for]."

9. An analysis of call records for *Mr. Kim's* Department of State *work phone* reveals that between May 26, 2009 and July 14, 2009, *36 calls* were placed to or received from telephone numbers associated with Reporter A, including 7 calls on the day that the June 2009 article was published.

10. During the September 24, 2009 non-custodial interview, when ask by the FBI for a cell phone number to reach him in the future, Mr. Kim stated that his cell phone was "no longer active" as of the day of the interview. Mr. Kim indicated to the FBI that he would be purchasing a new cell phone with a different number.

11. An analysis of call records for *Mr. Kim's cell phone* (which he apparently intends to disconnect after his interview with the FBI) reveals that between May 26, 2009 and June 30, 2009, *27 calls* were placed to or received from telephone numbers associated with Reporter A.

12. During the same September 24, 2009 non-custodial interview, Mr. Kim provided the FBI with e-mail account ███████████████ as a means of contacting him in the future. One day later, Mr. Kim e-mailed the FBI and stated that (like his soon to be disconnected

5

cell phone) "[m]y yahoo account that I gave you is full and am going to get rid of it. I can be reached at ▮▮▮▮▮▮▮▮▮."

13. It is apparent from the foregoing both that Mr. Kim has been in contact with Reporter A on multiple occasions in the recent past and that Mr. Kim does not want the FBI, who he knows is investigating the leak of classified information in the June 2009 article, to know about those contacts. Thus, the Applicant further certifies that the information likely to be obtained from the pen register and trap and trace device of Mr. Kim's email accounts, including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ would be relevant to the government's ongoing criminal investigation in that it will provide agents with investigative leads, and potential evidence at trial. Further, the FBI is anticipating confronting Mr. Kim with the evidence it has amassed during the investigation. Information from the pen register and trap and trace device of Mr. Kim's email accounts following his confrontation by the FBI could well result in evidence of consciousness of guilt. The internet service provider for ▮▮▮▮▮▮▮▮▮▮▮▮ Yahoo, Inc.

14. A pen register, as defined in Title 18, United States Code, Section 3127, is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." A trap and trace device is defined as "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire

---

[1] The government submits herewith this filing a separate Application for a pen register and trap and trace device, as well as an 18 U.S.C. § 2703(d) Application for subscriber and connection information, related to e-mail account ▮▮▮▮▮▮▮▮▮▮.

6

or electronic communication." These definitions reflect the significant amendments made by the USA PATRIOT Act, P.L. 107-56, § 216 (Oct. 26, 2001).

15. The term "electronic mail" refers to a system of stored electronic messaging between (or among) users of a computer network. On the Internet, each electronic mail message has a standard format consisting of two basic components: "headers" and the body of the message.

16. The "headers" on an electronic mail message contain, among other information, the network addresses of the source and destination(s) of the communication. Internet electronic mail addresses adhere to the standardized format "username@network", where username identifies a specific user mailbox associated with network, the system on which the mailbox is located. Standard headers denoting the source and destination addresses of an electronic mail message are "To:" and "cc:" (destinations), and "From:" (source). For example, a message containing the headers

```
From:     jane@doe.com
To:       richard@roe.com
Cc:       pat@address.com
```

indicates that user "jane" (on the doe.com system) is the sender, and that users "richard" (with a mailbox on roe.com) and "pat" (at address.com) are the intended recipients. Multiple destination addresses may be specified in the To: and cc: fields.

17. These source and destination addresses, analogous to the origination and destination phone numbers captured by traditional trap and trace devices and pen registers

installed on telephone lines, constitute "routing" and "addressing" information within the meaning of the statute, as amended in October 2001. As with traditional telephonic pen registers and trap and trace devices, it is feasible to use a combination of hardware and software to ascertain the source and destination addresses associated with Internet electronic mail.

18. Accordingly, for the above reasons, the applicant requests that the Court enter an order authorizing the installation and use of a trap and trace device to identify the source address of electronic mail communications directed to, and a pen register to determine the destination addresses of electronic mail communications originating from, ███████████████, along with the date and time of such communications. The applicant is not requesting, and does not seek to obtain, the contents of such electronic mail communications.

19. The applicant requests that the foregoing installation and use be authorized for a period of 60 days.

20. The applicant further requests that the Order direct that, upon service of the order upon it, Yahoo, Inc., furnish information, facilities, and technical assistance necessary to accomplish the installation of the trap and trace device and pen register, including installation and operation of the devices unobtrusively and with a minimum of disruption of normal service. Yahoo, Inc., shall be compensated by the FBI for reasonable expenses incurred in providing such facilities and assistance in furtherance of the Order.

21. The applicant further requests that the Order direct that the information collected and recorded pursuant to the Order shall be furnished to the FBI continuously, twenty-four (24)

8

hours per day, before, during or immediately after the transmission of the electronic mail communications, or at such other times as may be acceptable to the FBI.

22. The applicant further requests that the Order direct that the tracing operation shall encompass tracing the communications to their true source, if possible, without geographic limit.

23. Further, applicant respectfully requests the Court order that, pursuant to 18 U.S.C. § 3123(d)(2), Yahoo, Inc., and its agents and employees make no disclosure of the existence of this Application and Order, except as necessary to effectuate it, unless and until authorized by this Court and that, pursuant to 18 U.S.C. § 3123(d)(1), the Clerk of Court seal the Order (and this Application) until further order of this Court.

The foregoing is based on information provided to me in my official capacity by agents of the FBI and of other government agencies.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on this 12th day of March 2010.

Respectfully submitted,

RONALD C. MACHEN, JR.
UNITED STATES ATTORNEY

G. Michael Harvey
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
DC Bar No. 447-465
tel: 202-305-4155
fax: 202-307-6059
michael.harvey2@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**
MAR 16 2010
Clerk, U.S. District and
Bankruptcy Courts

IN THE MATTER OF THE APPLICATION OF )
THE UNITED STATES OF AMERICA FOR AN )
ORDER AUTHORIZING THE INSTALLATION )   MISC. NO. ⁄⁄ ⁄86
AND USE OF A PEN REGISTER, TRAP AND )
TRACE, AND CALLER IDENTIFICATION DEVICE )   UNDER SEAL
ON ELECTRONIC MAIL ACCOUNT )
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ )

## ORDER

This matter has come before the Court pursuant to an application under Title 18, United States Code, Section 3122 by G. Michael Harvey, an attorney for the Government, which application requests an Order under Title 18, United States Code Section 3123 authorizing the installation and use of a pen register and trap and trace device for electronic mail communications directed to and from the user accounts ▇▇▇▇▇▇▇▇▇▇▇▇ at Yahoo, Inc.

The Court finds that the applicant has certified that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation into possible violations of Title 18, United States Code, Section 793.

IT APPEARING that the information likely to be obtained by the pen register and trap and trace device described below is relevant to an ongoing criminal investigation of the specified offense,

IT IS ORDERED, pursuant to Title 18, United States Code, Section 3123, that agents of the Federal Bureau of Information ("FBI") may direct Yahoo, Inc., to install a trap and trace device to identify the source address of electronic mail communications directed to, and a pen register to determine the destination addresses of electronic mail communications originating

from, ███████████, along with the date and time (but not the contents) of such communications;

IT IS FURTHER ORDERED, pursuant to Title 18, United States Code, Section 3123(c)(1), that the use and installation of the foregoing occur for a period not to exceed 60 days;

IT IS FURTHER ORDERED, pursuant to Title 18, United States Code, Section 3123(b)(2), that Yahoo, Inc., upon service of the order upon it, shall furnish information, facilities, and technical assistance necessary to accomplish the installation of the pen register and trap and trace device, including installation and operation of the devices unobtrusively and with a minimum of disruption of normal service;

IT IS FURTHER ORDERED, that the FBI compensate Yahoo, Inc., for expenses reasonably incurred in complying with this Order;

IT IS FURTHER ORDERED, that the results of the pen register and trap and trace device shall be furnished to the FBI continuously, twenty-four (24) hours per day, before, during or immediately after the transmission of the electronic mail communications, or at such other times as may be acceptable to the FBI;

IT IS FURTHER ORDERED, that the tracing operation shall encompass tracing the communications to their true source, if possible, without geographic limit; and

IT IS FURTHER ORDERED, pursuant to Title 18, United States Code, Section 3123(b), that this Order and the application be sealed until otherwise ordered by the Court, and that Yahoo, Inc., not disclose the existence of the pen register and trap and trace device, or the

existence of the investigation to any person, except as necessary to effectuate this Order, unless or until otherwise ordered by the Court.

SO ORDERED this 15 day of March, 2010.

                                               *[signature]*
                                      UNITED STATES MAGISTRATE JUDGE

Serve: G. Michael Harvey
       Assistant United States Attorney
       United States Attorney's Office for the District of Columbia
       555 Fourth Street, N.W. – 11th Floor
       Washington, D.C. 20530
       202-305-4155

United States District Court
for the District of Columbia
A TRUE COPY
~~NANCY MAYER-WHITTINGTON~~GTON, Clerk
By _____
     Deputy Clerk 3/16/10

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AUTHORIZING THE INSTALLATION AND USE OF PEN REGISTERS AND TRAP AND TRACE DEVICES ON ACCOUNT: ███████ | MISC. NO. 10-186<br><br>Related to:<br>Criminal No. 1:10-cr-00225-CKK<br>Misc. No: 1:16-mc-02183<br><br>**UNDER SEAL** |

## MOTION TO MODIFY SEALING ORDER

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully moves this Court for a modification of the order granted by Magistrate Judge John M. Facciola on March 15, 2010, sealing the above-captioned application, order and related paperwork which was sought during the investigation of <u>United States v. Stephen Jin-Woo Kim</u>, Criminal No. 1:10-cr-00225-CKK. This request for partial unsealing is necessary in order to prevent the inadvertent disclosure of personal information or sources and methods related to reporter James Rosen and/or Fox News Network. In support of its motion, the United States states further:

### Background

On March 15, 2010, Magistrate Judge Facciola granted the Government's motion to seal the above-captioned application for pen registers and trap and trace devices, finding that sealing the aforementioned would further the legitimate prosecutorial interest in preserving the integrity of the ongoing criminal investigation of Stephen Jin-Woo Kim ("Kim"). On April 2, 2014, this Court accepted Kim's plea of guilty to a violation of Title 18 U.S.C. Section 793(d) and imposed a lawful sentence. The Government, in turn, dismissed the remaining count in the indictment, thereby resolving the criminal case.

On October 21, 2016, the Reporters Committee for Freedom of the Press ("Reporters Committee") filed an application for access to certain sealed court records, to include any applications for pen register and trap and trace devices, and orders pursuant to 18 U.S.C §2703(d), in the Kim matter. At that time, the Government undertook a review of its investigative files and determined that there was no longer a basis to keep the documents sought by the application of the Reporters Committee under seal. The Government then informed counsel for the Reporters Committee that it intended to move to unseal all of the documents at issue in the application.

## Circumstances Leading to Request to Modify Sealing Order

On November 21, 2016, counsel for reporter James Rosen and Fox News contacted Government counsel and expressed concern that the unsealing of the documents would unnecessarily disclose personal information or sources and methods related to the reporter and/or Fox News. Government counsel informed counsel for Mr. Rosen and Fox News that it had intended to redact any personally identifying information, such as dates of birth, email addresses, and phone numbers to protect the privacy of those involved. However, Government counsel could not make representations about whether the redacted documents would nevertheless reveal reporter sources and methods.

Consequently, the United States respectfully requests that it be permitted to disclose proposed redacted versions of the above-captioned application, order and related paperwork to James Rosen and to counsel for James Rosen and Fox News Network in order to allow for meaningful review prior to the Government moving to fully unseal. The United States will instruct counsel that counsel may also disclose the content of the partially unsealed documents to senior leadership at Fox News Network.

## Relief Sought

WHEREFORE, for the foregoing reasons, the United States respectfully requests that the Court modify the sealing order to allow the United States to disclose proposed redacted versions

of the above-captioned application, order and related paperwork to the individuals described herein. A proposed Order is submitted herewith.

>Respectfully submitted,
>
>CHANNING D. PHILLIPS
>United States Attorney
>D.C. Bar No. 415793

By: _____
Deborah A. Curtis
Assistant United States Attorney
National Security Section
California Bar Number 172208
555 Fourth Street NW
Washington, D.C. 20530
(202) 252-6920
deborah.curtis@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN THE MATTER OF THE APPLICATION
OF THE UNITED STATES OF AMERICA
FOR AN ORDER AUTHORIZING THE
INSTALLATION AND USE OF PEN
REGISTERS AND TRAP AND TRACE
DEVICES ON ACCOUNT:
██████████████████████

MISC. NO. 10-186

UNDER SEAL

FILED

NOV 29 2016

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

ORDER
(November 29, 2016)

The Government has moved to modify the sealing order in the above captioned application on the request of James Rosen and/or Fox News Network. Upon consideration of the Government's motion to modify the sealing order and for the reasons set forth in the Government's motion, it is this 29th day of November, 2016,

**ORDERED** that the Government's motion is hereby GRANTED, and that the above-captioned application, order and related paperwork be partially unsealed. It is further

**ORDERED** that James Rosen and counsel for James Rosen and Fox News Network shall provide the Government with any input regarding the propriety of fully unsealing these documents by no later than **December 6, 2016**. It is further

**ORDERED** that the Clerk of the Court shall mail a copy of this order, overnight, to:

    Deborah A. Curtis
    Assistant United States Attorney
    National Security Section
    555 Fourth Street NW
    Washington, D.C. 20530
    (202) 252-6920

**SO ORDERED.**

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AUTHORIZING THE INSTALLATION AND USE OF PEN REGISTERS AND TRAP AND TRACE DEVICES, AND CALLED IDENTIFICATION DEVICE ON ELECTRONIC MAIL ACCOUNT ■■■■■■■■■■■■■■■■■■■■■■■■■■■ | MISC. NO. 10-186<br><br>Related to:<br>Criminal No. 1:10-cr-00225-CKK<br>Misc. No: 1:16-mc-02183<br><br>**UNDER SEAL** |

## MOTION FOR UNSEALING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to unseal all motions, applications, orders and related paperwork in the above-captioned matter. As set forth in the Government's motion to seal the original application, granted by Magistrate Judge John M. Facciola on October 5, 2009, sealing of the above-described documents was necessary at that time because they contained facts concerning a continuing investigation and release of those facts could endanger the course and outcome of the investigation. Since Judge Facciola's Order, the investigation and resultant criminal case -- United States v. Stephen Jin-Woo Kim, Criminal No. 1:10-cr-00225-CKK -- have been resolved. Accordingly, there is no present law enforcement reason for continued sealing of the documents.

To protect the privacy of those involved, the Government respectfully requests that all personally identifiable information, including names of uncharged individuals, email addresses, and phone numbers that appear in the original application and order be redacted prior to those documents being placed on the public docket. Unredacted versions of those respective documents are appended to this Motion for the Court's review as Attachments A and C. Proposed redacted versions of the documents are appended as Attachments B and D.

By this Motion, the Government also seeks the unsealing of a motion to modify the original sealing order and the Court's order granting that motion, Attachments E and G, respectively. As set forth in that motion, the purpose of the partial unsealing was to afford Mr. James Rosen, a reporter, and Fox News Network the opportunity to view the proposed redactions to the original application prior to it being placed on the public docket. Counsel for Mr. Rosen and Fox News Network did review the documents and offered no objections. Accordingly, the Government also offers proposed redacted versions of that motion and order at Attachments F and H.[1]

Finally, by this Motion, the Government seeks to unseal this motion (without attachments) and the resulting Court order, redacting only the personally identifiable information contained in the case caption. Proposed redacted versions of that motion and proposed order are appended as Attachments I and J.

A proposed Order is submitted herewith.

**WHEREFORE**, the Government respectfully requests (1) that this Honorable Court order that all documents associated with the above-captioned application be unsealed and (2) that the attached redacted versions of those documents be placed on the public record.

Respectfully submitted,

CHANNING D. PHILLIPS
United States Attorney
D.C. Bar No. 415793

By: _____/s/_____
Deborah A. Curtis
Assistant United States Attorney
National Security Section
California Bar Number 172208
555 Fourth Street NW
Washington, D.C. 20530
(202) 252-6920
deborah.curtis@usdoj.gov

---

[1] At the request of counsel for Mr. Rosen and Fox News Network, their names are not redacted from the documents.

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AUTHORIZING THE INSTALLATION AND USE OF PEN REGISTERS AND TRAP AND TRACE DEVICES, AND CALLED IDENTIFICATION DEVICE ON ELECTRONIC MAIL ACCOUNT ▬▬▬▬▬▬ | MISC. NO. 10-186<br><br>Related to:<br>Criminal No. 1:10-cr-00225-CKK<br>Misc. No: 1:16-mc-02183<br><br>**Under Seal** |

## ORDER

Upon consideration of the Government's motion to unseal the above-captioned application, order and related paperwork, as well as the motion to modify the original sealing order and the order granting that motion and the instant motion to unseal (without attachments) and this order, for the reasons set forth in the Government's motion and for good cause shown, it is this

_____ day of December, 2016,

ORDERED that the Government's motion is hereby GRANTED, and that the above-captioned application, order and related paperwork be unsealed.

Further ORDERED that, to protect the privacy of the individuals involved, the proposed redacted versions of the documents be placed on the public record.

UNITED STATES DISTRICT COURT JUDGE<br>
COLLEEN KOLLAR-KOTELLY

Copy to:

Deborah A. Curtis
Assistant United States Attorney
National Security Section
555 Fourth Street NW
Washington, D.C. 20530
(202) 252-6920